<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

MICHAEL LINWOOD MARTIN,   :
           :  Civil Action No. 06-1338 (JAP)
      Plaintiff, :
           :
      v.     :  **OPINION**
           :
MICHAEL DOWLING, et al.,   :
           :
      Defendants. :

**APPEARANCES:**

Plaintiff <u>pro</u> <u>se</u>
Michael Linwood Martin
South Woods State Prison
215 Burlington Rd., South
Bridgeton, NJ 08302

**PISANO**, District Judge

   Plaintiff Michael Linwood Martin, a prisoner confined at South Woods State Prison in Bridgeton, New Jersey, seeks to bring this action <u>in</u> <u>forma</u> <u>pauperis</u> pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights.  Based on his affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. § 1915(g), the Court will grant Plaintiff's application to proceed <u>in</u> <u>forma</u> <u>pauperis</u> pursuant to 28 U.S.C. § 1915(a) and order the Clerk of the Court to file the Complaint.

   At this time, the Court must review the Complaint to determine whether it should be dismissed as frivolous or

malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.

I.  BACKGROUND

The following factual allegations are taken from Plaintiff's Complaint and are accepted as true for purposes of this review.

At his parole hearing on January 26, 2006, Plaintiff invoked his Fifth Amendment right against self-incrimination and refused to answer questions about the crimes for which he was incarcerated.[1]  As a result, the Parole Board denied parole and imposed a future eligibility term of 36 months.  Plaintiff states that:

> The State Parole Board Panel discriminated against Michael Linwood Martin because he employed his privilege against self incrimination (U.S.C.A. Const. Amend 5) and use it for their main reason for denial [of] Parole.  Under their reasons for Denial they check: Insufficient Problem(s) resolution; Lack of insight into criminal behavior; Denial of Crimes; minimizes conduct; Other:  Unwilling to discuss his past behavior, As demonstrated by: Panel Interview; Documentation in case file; Confidential material/ professional report relied on.

_____

[1] Plaintiff does not state the crimes of which he was convicted.  This Court will take judicial notice that Plaintiff was convicted, pursuant to a jury trial in 1993, of burglary, aggravated sexual assault, robbery, endangering the welfare of a child, second degree sexual assault, terroristic threats, unlawful possession of a weapon, and possession of a weapon for an unlawful purpose.  See Martin v. MacFarland, Civil Action No. 03-4243 (FSH), Docket Entry No. 29, Opinion, at 3-5; Fed.R.Evid. 201.

> The Panel also suggested that Michael Linwood
> Martin consider participation in Institutional Programs
> geared toward criminal behavior; one to one counseling;
> focus on victim, MRT, Anger Control and any counseling
> made available.  All based on him not admitting guilt.

(Memorandum of Law at 2.)  Plaintiff does not state whether he has exhausted his administrative and judicial appeal remedies with respect to the denial of parole.

Plaintiff has named as defendants two members of the Parole Board who conducted his hearing, the Vice-Chairman of the New Jersey State Parole Board, the Chairman of the New Jersey State Parole Board, and the Executive Director of the New Jersey State Parole Board.

Plaintiff states that the denial of parole was based upon a violation of his Fifth Amendment right against self-incrimination, his Fourteenth Amendment due process rights, and his equal protection rights.  He seeks declaratory and injunctive relief, in the form of a new parole hearing directing the defendants to allow him to exercise his privilege against self-incrimination until the exhaustion of his appeals from his conviction.[2]

---

[2] The Court does not construe the Complaint as alleging a right to immediate parole based upon an unconstitutional hearing. Any such claim must be brought as a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 following exhaustion of state remedies.  Any claim for damages based upon denial of parole on unconstitutional grounds does not accrue until the decision to deny parole has been overturned or otherwise invalidated.  See Heck.  It is, however, appropriate for a state prisoner to challenge the constitutionality of state parole procedures in an

II.  <u>STANDARDS FOR A SUA SPONTE DISMISSAL</u>

This Court must dismiss, at the earliest practicable time, certain <u>in forma pauperis</u> and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief.  <u>See</u> 28 U.S.C. § 1915(e)(2) (<u>in forma pauperis</u> actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).

In determining the sufficiency of a <u>pro se</u> complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972); <u>United States v. Day</u>, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  <u>Morse v. Lower Merion School Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997).  The Court need not, however, credit a <u>pro se</u> plaintiff's "bald assertions" or "legal conclusions."  <u>Id.</u>

A <u>pro se</u> complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle

_____

action for declaratory and injunctive relief under § 1983, as Plaintiff does here.  <u>See Wilkinson v. Dotson</u>, 544 U.S. 74 (2005).

him to relief.'"  Haines, 404 U.S. at 521 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981).  Where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment.  Denton v. Hernandez, 504 U.S. 25, 34 (1992); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

### III.  SECTION 1983 ACTIONS

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law.  West v. Atkins, 487 U.S. 42, 48

5

(1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

Local government units and supervisors are not liable under § 1983 solely on a theory of respondeat superior. See City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 n.8 (1985); Monell v. New York City Department of Social Services, 436 U.S. 658, 690-91, 694 (1978) (municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of); Natale v. Camden County Correctional Facility, 318 F.3d 575, 583-84 (3d Cir. 2003). "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted). Accord Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).

Finally, a § 1983 action brought against a person in his or her official capacity "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent." Monell, 436 U.S. at 690 n.55. "[I]n an official-

6

capacity action, ... a governmental entity is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation; thus, in an official capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law." <u>Kentucky v. Graham</u>, 473 U.S. 159, 166 (1985) (internal quotation marks and citations omitted).

IV.  <u>ANALYSIS</u>

A.   <u>The Privilege Against Self-Incrimination</u>

The Self-Incrimination Clause of the Fifth Amendment to the U.S. Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself."  The Self-Incrimination Clause applies to the States through the Fourteenth Amendment.  <u>Malloy v. Hogan</u>, 378 U.S. 1, 6 (1964).  The Clause speaks of "compulsion," <u>United States v. Monia</u>, 317 U.S. 424, 427 (1943), and the U.S. Supreme Court has emphasized that the "constitutional guarantee is only that the witness not be compelled to give self-incriminating testimony." <u>United States v. Washington</u>, 431 U.S. 181, 188 (1977).

In <u>McKune v. Lile</u>, 536 U.S. 24 (2002), a sharply-divided Supreme Court held that the Fifth Amendment right against compelled self-incrimination is not violated by a prison sexual-abuse treatment program which imposes loss of various prison privileges for failure to participate in a counseling program that requires the inmates to complete an unprivileged sexual

7

history form which details all prior sexual activities, regardless of whether such activities constitute uncharged criminal offenses.  In upholding the constitutionality of the treatment program, both the plurality and the concurring Justices noted that failure to participate did not affect eligibility for good time credits or parole.  <u>See</u> 537 U.S. at 38 (Kennedy, J., plurality opinion); 537 U.S. at 52-53 (O'Connor, J., concurring).

Relying upon <u>McKune</u>, the Superior Court of New Jersey, Appellate Division, invalidated a New Jersey statute[3] to the extent it permitted good time credits to be withheld or revoked based upon a prisoner's refusal to disclose information about past events for which he could face subsequent prosecution. <u>Bender v. New Jersey Dept. of Corrections</u>, 356 N.J. Super. 432 (App. Div. 2003).  One year later, the Appellate Division expanded upon <u>Bender</u>, holding that a prisoner retains his privilege against self-incrimination until he has exhausted the direct appeal process from his criminal conviction, that a prisoner is not required to discuss the crimes for which he was

---

[3] N.J.S.A. 2C:47-8 provides, in pertinent part:

> a term of imprisonment imposed on a person confined to the Adult Diagnostic and Treatment Center ... shall not be reduced by progressive time credits or credits for diligent application to work and other institutional assignments for any year or fractional part of a year if the person failed to fully cooperate with all treatment offered to him during that time period.

convicted until his petition for certification is denied by the Supreme Court of New Jersey, and that good time credits may not be withheld or revoked based upon the refusal to disclose information about the crime of conviction until the direct appeals are exhausted.  Lewis v. Dept. of Corrections, 365 N.J. Super. 503 (App. Div. 2004).

Plaintiff here relies upon McKune, Bender, and Lewis, in support of his claim that the denial of parole in his case constituted a violation of the Self-Incrimination Clause.  The Court of Appeals for the Third Circuit, however, has held in a non-precedential opinion that there is no Fifth Amendment violation in forcing a prisoner to choose between maintaining his innocence (with respect to the crime of which he was convicted) and participating in a treatment program necessary for parole recommendation.  See Thorpe v. Grillo, 80 Fed.Appx. 215, 2003 WL 22477890 (3d Cir. 2003) (unpubl.), cert. denied, 542 U.S. 924 (2004).[4]

---

[4] The Circuit Courts have taken a range of positions with respect to the issue whether the Self-Incrimination Clause is violated by loss of eligibility for good time credits or parole based upon failure to admit either the crime of conviction or, in connection with a rehabilitation program, uncharged sexual conduct which may be criminal.  See, e.g., Searcy v. Simmons, 299 F.3d 1220 (10th Cir. 2002) (where there is no liberty interest in good time credits, loss of eligibility for good-time credits as a consequence of refusing to admit crime of conviction does not violate Self-Incrimination Clause); Ainsworth v. Stanley, 317 F.3d 1 (1st Cir. 2002), cert. denied, 538 U.S. 999 (2003) (voluntary sexual offender treatment program which requires participant to admit crime and divulge other offenses does not

The Fifth Amendment right against self-incrimination remains available to a prisoner despite his conviction.  See <u>Minnesota v. Murphy</u>, 465 U.S. 420, 426 (1984).  However, "[i]t is well established that the privilege protects against real dangers, not remote and speculative possibilities."  <u>Zicarelli v. New Jersey State Commission of Investigation</u>, 406 U.S. 472, 478 (1972).  "The central standard for the privilege's application has been whether the claimant is confronted by substantial and 'real,' and not merely trifling or imaginary, hazards of incrimination."  <u>Marchetti v. United States</u>, 390 U.S. 39, 53 (1968) (citations omitted).  Thus, "when a witness can demonstrate a fear of prosecution, which is more than fanciful or merely speculative, he has a claim of privilege that meets constitutional muster."

---

violate Self-Incrimination Clause, even though non-participation results in denial of parole); <u>Vinson v. Michigan Parole Board</u>, 2006 WL 305653 (E.D. Mich. 2006) (parole board's consideration of prisoner's refusal to accept responsibility for his crime does not violate Self-Incrimination Clause); <u>Sullivan v. Pennsylvania Bd. of Probation and Parole</u>, 2006 WL 1050526 (W.D. Pa. 2006) (where there is no liberty interest in parole, no Fifth Amendment violation from adverse parole decision based upon refusal to admit to crime of conviction or other potentially criminal behavior); <u>Donhauser v. Goord</u>, 314 F.Supp.2d 119, 127 (N.D.N.Y. 2004) ("requiring plaintiff as part of the [sexual offender counseling program] to divulge a history of sexual conduct, including illegal acts for which no criminal charges have been brought, or else face a loss of good time credits, violates his Fifth Amendment privilege against self-incrimination"); <u>Boddie v. New York State Division of Parole</u>, 288 F.Supp.2d 431 (S.D.N.Y. 2003) (Fifth Amendment does not prohibit parole authorities from drawing an adverse inference from an inmate's refusal to answer questions regarding the crime of conviction).  Because of the resolution of this matter, this Court need not enter this fray.

In re Corrugated Container Antitrust Litigation, 662 F.2d 875, 883 (D.C.Cir.1981) (citing In re Folding Carton Antitrust Litigation, 609 F.2d 867, 871 (7th Cir.1979)).

Here, there does not appear to be any "real" possibility that Plaintiff could be subject to future prosecution for admitting his responsibility for the crimes of which he was convicted in 1993.  See, e.g., Neal v. Shimoda, 131 F.3d 818, 833 (9th Cir. 1997) (where double jeopardy considerations would preclude use of admission in any future prosecution, possibility of incrimination from admission that prisoner committed the crime of conviction is no more than a "remote and speculative possibility" insufficient to trigger Fifth Amendment protection); Lewis, 365 N.J.Super. at 507 (where direct appeals are exhausted, prisoner no longer has a Fifth Amendment privilege to refuse to answer questions about the crime of conviction).

This Court will take judicial notice of its own docket and the dockets of the state courts of New Jersey, see Fed.R.Evid. 201; Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd., 181 F.3d 410, 426-27 (3d Cir. 1999) (federal court, on a motion to dismiss, may take judicial notice of another court's opinion, not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity).  State and federal judicial dockets reflect that Plaintiff's direct appeals ended on

11

October 15, 1998, when the Supreme Court of New Jersey denied
certification. <u>See</u> <u>Martin v. MacFarland</u>, Civil Action No. 03-
4243 (FSH) Docket Entry No. 29, Opinion, at 5; <u>State v. Martin</u>,
156 N.J. 426 (1998) (certification denied). Plaintiff's state
post-conviction relief proceedings concluded on July 14, 2003,
when the Supreme Court of New Jersey denied certification. <u>See</u>
<u>Martin v. MacFarland</u>, Civil Action No. 03-4243 (FSH) (Docket
Entry No. 29, Opinion, at 6); <u>State v. Martin</u>, 177 N.J. 492
(2003) (certification denied). On October 22, 2004, the
Honorable Faith S. Hochberg of this Court denied Plaintiff's
petition for writ of habeas corpus; on June 6, 2005, the Court of
Appeals for the Third Circuit denied a certificate of
appealability; and on October 11, 2005, the Supreme Court of the
United States denied certiorari. <u>See</u> <u>Martin v. MacFarland</u>, Civil
Action No. 03-4243 (FSH) (Docket Entries Nos. 29, 30, 36, 38).

   Thus, it appears that Plaintiff's direct appeals had ended
years before the parole proceeding at which he was asked about
the crime of his conviction. In addition, even his federal
collateral challenges to his state conviction were completed
before the parole hearing at issue here. Accordingly, the
possibility that Plaintiff's admissions could lead to further
prosecution was merely "remote and speculative." Plaintiff no
longer had a Fifth Amendment privilege against answering
questions about the crime of conviction. <u>Cf.</u> <u>Rice v. Michigan</u>

Parole Board, 2005 WL 2297463 (W.D. Mich. Sept. 21, 2005) (where
no appeals or post-conviction relief proceedings remain pending,
possibility of any admission to crime of conviction incriminating
prisoner in the future "is no more than a remote and speculative
possibility, which is insufficient to trigger the Fifth
Amendment's protection against self-incrimination").  Plaintiff
fails to state a claim for violation of the Self-Incrimination
Clause.[5]

B.   Due Process

     There is no federal constitutional right to parole; states,
however, may create a parole entitlement protected by the Due

_____

     [5] Should Plaintiff be able to establish some error in the
facts of which this Court has taken judicial notice, or that any
admission to the crimes of conviction otherwise would subject him
to a real possibility of prosecution, he may move to reopen this
action with a proposed amended complaint within 30 days after
entry of this Opinion and accompanying Order.  Cf., e.g., Thomas
v. Independence Township, 2006 WL 2621094 (3d Cir. 2006) ("Even
when a defendant does not formally move for a more definite
statement, the district court has the discretion to demand more
specific factual allegations in order to protect the substance of
the qualified immunity defense and avoid subjecting government
officials who may be immune from suit to needless discovery and
the other burdens of litigation.").  Plaintiff should note that
when an amended complaint is filed, the original complaint no
longer performs any function in the case and "cannot be utilized
to cure defects in the amended [complaint], unless the relevant
portion is specifically incorporated in the new [complaint]."  6
Wright, Miller & Kane, Federal Practice and Procedure § 1476 (2d
ed. 1990) (footnotes omitted).  An amended complaint may adopt
some or all of the allegations in the original complaint, but the
identification of the particular allegations to be adopted must
be clear and explicit.  Id.  To avoid confusion, the safer course
is to file an amended complaint that is complete in itself.  Id.

Process Clause.  <u>See</u> <u>Greenholtz v. Inmates of Nebraska Penal &</u>
<u>Correctional Complex</u>, 442 U.S. 1, 7 (1979).  <u>See also</u> <u>Board of</u>
<u>Pardons v. Allen</u>, 482 U.S. 369 (1987); <u>Prevard v. Fauver</u>, 47
F.Supp.2d 539, 545 (D.N.J.), <u>aff'd</u>, 202 F.3d 254 (3d Cir. 1999).

Both federal and state courts have held that the New Jersey
parole statute contains language creating an expectation of
parole eligibility entitled to some measure of procedural due
process protections.  <u>See</u> <u>Williams v. New Jersey State Parole</u>
<u>Board</u>, 1992 WL 32329, *2 (D.N.J. Feb. 4, 1992), <u>aff'd</u>, 975 F.2d
1553 (3d Cir. 1992); <u>New Jersey State Parole Board v. Byrne</u>, 93
N.J. 192, 203 (1983).

> The New Jersey Constitution guarantees only that
> "[a] system for the granting of parole shall be
> provided by law."  N.J. Const. (1947), Art. V, § II,
> par. 2.  This provision does not guarantee a liberty
> interest.  But it is undeniable that "[l]iberty from
> bodily restraint always has been recognized as the core
> of the liberty protected by the Due Process Clause from
> arbitrary governmental action."  Greenholtz, 442 U.S.
> at 18, 99 S.Ct. at 2109, 60 L.Ed.2d at 682-83 (Powell,
> J., concurring in part and dissenting in part).
>
> We therefore believe that the prisoner's liberty
> interest in freedom at the end of the parole process,
> implicated by the advanced eligibility date created by
> N.J.S.A. 30:4-123.51, is sufficient to invoke the
> procedural protections hereinafter outlined.
>
> ...
>
> Only a few basic procedures are required to deal
> with the risks of erroneous or arbitrary determinations
> in this context.  We conclude that the process required
> is notice of the pendency of the parole disposition, a
> statement by the objecting judge or prosecutor of the
> reasons why the punitive aspects of the sentence have
> not been fulfilled, and the opportunity for the

> prisoner to respond in writing to that statement of
> reasons.  No hearing, confrontation, or counsel issues
> are implicated here.

<u>Byrne</u>, 93 N.J. at 208, 211.

The Honorable John C. Lifland of this Court has held that <u>Williams</u> and <u>Byrne</u> remain good law even after taking into account the rule announced by the Supreme Court in <u>Sandin v. Conner</u>, 515 U.S. 472, 484 (1995) (citations omitted), that liberty interests created by state law "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  <u>See</u> <u>Watson v. DiSabato</u>, 933 F.Supp. 390, 392-93 (D.N.J. 1996) (prisoner has liberty interest in parole decisions, including notice of determination, statement by the government, and opportunity for prisoner to submit written response).

Here, Plaintiff does not allege that he suffered any deprivation of the procedural protections described above. Plaintiff has failed to state a claim for violation of his due process rights in connection with the decision to deny him parole.

C.   Equal Protection

     Plaintiff also asserts that the denial of parole to persons who deny their guilt is a violation of the Equal Protection Clause, because it puts prisoners who deny their guilt or assert the privilege against self-incrimination at a disadvantage vis-a-vis prisoners who have pleaded guilty.

     The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike.  City of Cleburne, Texas v. Cleburne Living Center, 473 U.S. 432, 439 (1985) (citing Plyler v. Doe, 457 U.S. 202, 216 (1982); Artway v. Attorney General of New Jersey, 81 F.3d 1235, 1267 (3d Cir. 1996).  Despite its sweeping language, though, "[t]he Equal Protection Clause does not forbid classifications.  It simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike."  Nordlinger v. Hahn, 505 U.S. 1, 10 (1992).

     Proof of disparate impact alone, however, is not sufficient to succeed on an equal protection claim;  a plaintiff also must prove that the defendant intended to discriminate.  Village of Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 264-66 (1977); Washington v. Davis, 426 U.S. 229, 242, 244-45 (1976).  Thus, discriminatory intent must be a motivating

16

factor in the decision, but it need not be the sole motivating factor.  Village of Arlington Heights, 429 U.S. at 265-66.

Once this intentional disparity in treatment is shown, a court will proceed to determine whether the disparity can be justified under the requisite level of scrutiny.  See City of Cleburne, 473 U.S. at 439-40; Plyler v. Doe, 457 U.S. 202, 216-17 (1982); Price v. Cohen, 715 F.2d 87, 91-92 (3d Cir. 1983), cert. denied, 465 U.S. 1032 (1984).  In testing the validity of state legislation or other official action that is alleged to deny equal protection, the "general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest."  City of Cleburne, 473 U.S. at 439-40.  The general rule gives way, however, when a statute impinges on a fundamental constitutional liberty interest or classifies by race, alienage, or national origin; outside of the prison context, these classifications "are subjected to strict scrutiny and will be sustained only if they are suitably tailored to serve a compelling state interest."  Id. at 440.  Similarly, outside of the prison context, a classification based on gender or illegitimacy is subject to "heightened" scrutiny and fails unless it is "substantially related to a legitimate state interest."  Id. (citations omitted).

17

As there is no constitutional liberty interest in parole, and prisoners who assert their Fifth Amendment privilege against self-incrimination are not a suspect class, the challenged practice is not subject to strict scrutiny.  It can hardly be doubted that considering acceptance of responsibility for one's crimes in the context of making a parole decision is rationally related to a legitimate state interest.  As noted by the Supreme Court:

> The Court has instructed that rehabilitation is a legitimate penological interest that must be weighed against the exercise of an inmate's liberty.  Since "most offenders will eventually return to society, [a] paramount objective of the corrections system is the rehabilitation of those committed to its custody." Acceptance of responsibility in turn demonstrates that an offender "is ready and willing to admit his crime and to enter the correctional system in a frame of mind that affords hope for success in rehabilitation over a shorter period of time than might otherwise be necessary."

McKune v. Lile, 536 U.S. at 36 (plurality opinion) (citations omitted).  See also Carroll v. Simmons, 89 Fed.Appx. 658, 662, 2004 WL 206329 (10th Cir. 2004) ("a requirement that a sex offender participate in a treatment program bears a rational relationship to rehabilitative objectives") (citation omitted. Plaintiff has failed to state an equal protection claim.

V.   <u>CONCLUSION</u>

For the reasons set forth above, the Complaint must be dismissed, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim.  An appropriate order follows.


<u>/s/ Joel A. Pisano</u>
JOEL A. PISANO
United States District Judge

Dated: September 20, 2006